FILED
2025 JUL 23 PM 2:14
CLERK
U.S. DISTRICT COURT

Benjamin Bennett
4627 Locust Hills
Holladay, UT 84117
Phone: 425.273.0294
Email: Benrbennett1219@gmail.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BENJAMIN R. BENNETT**<br><br>Plaintiff,<br><br>v.<br><br><br>**NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER,**<br><br>Defendant | **COMPLAINT FOR DAMAGES**<br><br>**(JURY TRIAL DEMANDED)**<br><br><br>Civil Action No._____<br><br><br>Judge: _____<br><br>Case: 2:25−cv−00601<br>Assigned To : Campbell, Tena<br>Assign. Date : 7/23/2025<br>Description: Bennett v. Nationstar Mortgage LLC. |

### I.        INTRODUCTION

1. Plaintiff Ben Bennett brings this action against Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") for serious mortgage servicing errors involving mishandling of escrow funds, failure to maintain required insurance coverage, improper billing, and refusal to respond to multiple Qualified Written Requests ("QWRs") in violation of federal law.

2. These violations resulted in a lapse in homeowner's insurance coverage, property damage, out-of-pocket costs, denial of an insurance claim, and financial penalties from unpaid property taxes. Defendant's conduct reflects a pattern of negligent

mismanagement, inaccurate escrow accounting, and disregard for statutory obligations under the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), and state consumer protection laws including the Utah Consumer Sales Practices Act ("UCSPA"), Utah Code Ann. § 13-11-1 et seq.

3. Plaintiff is also pursuing a separate and unrelated case in this District involving another mortgage servicer (Select Portfolio Servicing, Inc.). That matter involves a different mortgage loan, different property, and set of legal claims. The case against Defendant is factually and legally distinct and Plaintiff affirms that it is brought in good faith and not for any improper purpose.

4. Plaintiff does not seek to modify or alter the terms of the underlying promissory note serviced by Defendant.

5. Plaintiff seeks only to enforce compliance with its terms and with applicable federal and state servicing laws. Plaintiff has complied with the note and expects that Defendant do the same.

## II.    JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including 12 U.S.C. § 2605 et seq. (RESPA) and 15 U.S.C. § 1601 et seq. (TILA).

6. Venue is proper in this District under 28 U.S.C. § 1391 because the Plaintiff resides in Utah, Defendant conducts mortgage servicing in this District, and a substantial part of the events giving rise to the claims occurred here. The underlying mortgage note contains no arbitration clause, no forum selection clause, and no provision restricting venue or litigation rights, making this Court a proper and permissible venue under federal law.

## III.    PARTIES

7. Plaintiff Ben Bennett is a natural person and the mortgagor of the property located at 57-077 Eleku Kuilima Pl #85, Kahuku, Hawaii. He resides in Salt Lake City, Utah and in Kahuku, Hawaii.

8. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper is a nationwide mortgage servicing company headquartered in Texas and doing business throughout the United States, including in Utah.

8(a). Defendant is the current mortgage **servicer** for the loan at issue. The original lender was Plaza Home Mortgage, Inc., and Defendant assumed servicing responsibilities well before the events giving rise to this action. Defendant is not the original lender or noteholder.

## IV.   FACTUAL ALLEGATIONS

9.  On July 10, 2020, Plaintiff executed a mortgage loan note with Plaza Home Mortgage, Inc., secured by real property in Kahuku, Hawaii.  A homeowners insurance policy provided by Liberty Mutual and to be paid for via escrow was placed simultaneously with the purchase of the property.

10. At some point in 2021, Plaintiff's loan was transferred for servicing to Defendant. Between 2021 and June 2023, Defendant made on time escrow disbursements for taxes and insurance.

11. From the time that Defendant assumed servicing responsibility for Plaintiff's loan, Defendant was listed as the mortgage contact on the Liberty Mutual insurance policy.

12. On or about June 25,2023, Defendant failed to remit payment from escrow to Liberty Mutual for Plaintiff's homeowner's insurance policy (H62-261-328134-60).

13. Liberty Mutual Insurance reports that they sent multiple letters to Defendant's Springfield, Ohio address asking them to renew the policy including final demand letters sent on or about 6/25/2023 and 7/25/2023.

14. On or about September 9, 2023, Liberty Mutual canceled the Homeowners insurance policy for non-payment.

15. At some point in late 2023 or early 2024, Plaintiff was reviewing the Liberty Mutual Insurance Policy and coverage.  At that time, Plaintiff became aware that the policy had been cancelled for non-payment.  Plaintiff immediately restored coverage by paying out of pocket for premiums.

16. At some point in late 2023 or early 2024, Plaintiff contacted Defendant to investigate why the Liberty Mutual Insurance policy was not paid.

17. Defendant's representative was silent on the existence of any Liberty Mutual Insurance Policy.

18. Defendant's representative communicated that an active homeowners policy was in place with "USAA Casualty Insurance Co. with policy 02059578391A with an annual amount of $1,496.74."

19. On or about August 2024, Plaintiff's property sustained material damage and loss of use totaling approximately $63,509.25.

20. On or about March 2025, Plaintiff attempted to submit an insurance claim for the August 2024 loss with Liberty Mutual. This claim was denied due to lack of coverage at the time of the loss.

21. In March 2025, Plaintiff attempted to file an insurance claim with USAA under policy number 02059578391A for the same loss.

22. Upon investigation, USAA communicated to Plaintiff that no such policy ever existed associated with Plaintiff's name and/or Plaintiff's property. As a result, USAA would not consider a claim for property damage.

23. In March 2025, Plaintiff submitted a claim under the HOA's force-placed secondary insurance policy, which ultimately reimbursed $34,509.25 leaving approximately $29,000 in unreimbursed loss. Defendant played no role in procuring this mitigation coverage.

24. On April 30 2025, Plaintiff submitted a formal QWR and Notice of Error to Defendant related to these events via secure upload.

25. On May 2, 2025, Defendant acknowledged receipt of the QWR and promised a response by June 12, 2025, but failed to respond substantively by that date.

26. Instead, Defendant sent boilerplate form letters requesting unrelated documents and continued to delay, ultimately stating new deadlines of July 22 and July 29.

27. On June 9, 2025, Plaintiff submitted a final demand letter reiterating the error and requesting resolution within 10 business days.

28. On June 11, 2025, Plaintiff submitted a second QWR to Defendant reporting that Defendant had failed to pay 2024 property taxes via the escrow account resulting in $612.95 in penalties and interest. On June 12, 2025, Defendant confirmed receipt but said they would need until July 22, 2025 to respond to this QWR.

29. On June 16, 2025, Plaintiff sent a formal letter confirming that—out of good faith—he would wait until July 22, 2025 for resolution of both QWRs, but that no further extensions beyond that would be accepted.

29(a). Defendant appears to have engaged in a pattern or practice of noncompliance with RESPA obligations, including but not limited to: (a) its failure to respond substantively to Plaintiff's April 30, 2025 Qualified Written Request; (b) failure to respond substantively to Plaintiff's June 11, 2025 QWR; and (c) its use of boilerplate letters that deflect or delay resolution without addressing the underlying issues.  Upon information and belief, Defendant has received regulatory scrutiny or other consumer complaints involving similar escrow mismanagement and QWR failures, which will be substantiated in discovery.  Accordingly, Plaintiff may seek enhanced statutory damages under 12 U.S.C. § 2605(f)(1)(B).

30. As of July 23, 2025, Defendant has failed to provide a legally sufficient response and/or made attempts to resolve the matter.

30(a). Plaintiff brings this action in good faith, with factual and evidentiary support, and after first seeking a non-litigious resolution through multiple written demand letters. Plaintiff further affirms that this Complaint is supported by law and fact, and is not brought for the purpose of causing unnecessary delay, burden, or expense, and therefore should not give rise to any claim of fee-shifting or sanctions under Rule 11 or any applicable statute.

30(b). In addition to the violations described above, Plaintiff submitted a prior Qualified Written Request to Defendant in March 2022, which Defendant acknowledged in writing. Defendant's acknowledgment confirmed receipt and promised a response within 30 days pursuant to RESPA. However, Defendant never provided a substantive response beyond a boilerplate response.  No such response appears in its servicing records. While the statute of limitations has expired on this individual violation, it demonstrates a pattern of non-responsiveness and statutory noncompliance by Defendant, relevant to punitive damages, willfulness, and systemic servicing failures.

### V.    CLAIMS FOR RELIEF

**Count I – Violation of RESPA (12 C.F.R. § 1024.34)**
31. Defendant failed to make timely disbursements from escrow to maintain insurance coverage.
32. This resulted in loss of coverage and damages for which Defendant is responsible.

**Count II – Violation of RESPA (12 U.S.C. § 2605(e))**
33. Defendant failed to provide a timely or adequate response to Plaintiff's April 30,

2025 QWR.

34. Plaintiff is entitled to actual damages, statutory penalties, and attorney's fees.

### Count III – Breach of Fiduciary Duty

35. Defendant acted as a fiduciary by controlling escrow funds.

36. Defendant's mismanagement of those funds constituted a breach of fiduciary duty.

### Count IV – Violation of the Utah Consumer Sales Practices Act (UCSPA), Utah Code Ann. § 13-11-4

37. Defendant's actions, including billing Plaintiff's escrow account for a non-existent insurance policy with USAA and sending misleading form letters in response to Qualified Written Requests, constitute deceptive acts or practices in connection with the consumer transaction involving Plaintiff's mortgage loan.

37(a). These acts violate the Utah Consumer Sales Practices Act (UCSPA), Utah Code Ann. § 13-11-4, which prohibits suppliers from committing deceptive or unconscionable acts in consumer transactions.

37(b). Plaintiff relied on the Defendant to properly administer escrow payments and provide truthful and accurate servicing communications. Defendant's conduct caused material harm and is actionable under Utah law.

### VII. DAMAGES

38. Plaintiff seeks the following damages, supported by documentation and consistent with similar cases:

39(a). Actual damages of $30,496.74

39(b). Property tax penalties and interest in excess of $612.95 resulting from Defendant's failure to timely disburse escrowed tax payments (June 2025).

39(c). Loss of use and interest on funds paid out of pocket in 2024–2025, reasonably estimated at $750.00.

39(d). Emotional distress, mental anguish, and inconvenience arising from the lapse in coverage, claim denials, and prolonged servicing delays in the amount of $15,000.00, consistent with awards in analogous RESPA and escrow mismanagement cases (See, e.g., Houston v. U.S. Bank Home Mortg., 505 F. App'x 543 (6th Cir. 2012); Moore v. Chase, 2017 WL 4158605 (E.D. Cal. Sept. 19, 2017); Ploog v. HomeSide Lending, Inc., 209 F. Supp. 2d 863 (N.D. Ill. 2002).)

39(e). Statutory damages under 12 U.S.C. § 2605(f)(1)(B), in an amount not less than $4,000 and subject to enhancement based on Defendant's pattern or practice of noncompliance.

39(f). Punitive damages of no less than $50,000, consistent with *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 3d 1156 (D. Minn. 2014) (upholding $75,000 punitive award for repeated RESPA and servicing violations).

39(g). Filing fees and court costs, and attorney's fees if applicable.

40. Plaintiff expressly reserves the right to amend, supplement, or expand the claims and claimed damages upon receipt of additional evidence, documents, or disclosures obtained through discovery, including expert reports, audit logs, internal servicing records, or third-party communications that are likely to be produced in discovery.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

41. Enter judgment in favor of Plaintiff and against Defendant;

42. Award actual damages in the amount of **$30,496.74**, consisting of unreimbursed insurance-related losses and escrow charges for a non-existent policy;

43. Award statutory damages under 12 U.S.C. § 2605(f)(1)(B), in an amount not less than $4,000 and up to the statutory maximum, based on Defendant's pattern or practice of noncompliance with RESPA's QWR response and escrow administration requirements;

44. Award emotional distress damages in the amount of **$15,000.00**, consistent with judicial precedent in RESPA and escrow servicing violation cases involving prolonged delay, loss of coverage, and out-of-pocket mitigation efforts.

45. Award punitive damages in an amount not less than $50,000, consistent with awards in similar RESPA and escrow servicing cases where servicer conduct reflects willful disregard or systemic failure;

46. Award injunctive and declaratory relief requiring Defendant to:

> 46(a). Acknowledge its servicing error;

> 46(b). Pay $612.95 in penalties and interest assessed by the City & County of Honolulu for unpaid 2024 property taxes due to escrow nonpayment, along with any additional accrued interest or late fees as well as the underlying tax.  Correct escrow account records and refund any misapplied charges;

> 46(c). Award loss of use and interest on funds paid out of pocket in 2024–2025, reasonably estimated at $750.00.

47. Award the cost of **filing fees** and **court costs** incurred in bringing this action;

48. Order that each party bear its own costs and expressly prohibit fee-shifting against Plaintiff, given that this action is brought pro se, in good faith, and under consumer protection statutes designed to prevent hardship and imbalance in litigation resources; and

49. Grant such other and further relief as the Court deems just and proper.

**IX.  JURY DEMAND**

50. Plaintiff demands a trial by jury on all issues so triable.


**X. CERTIFIICATION UNDER RULE 11**

51. Plaintiff certifies that to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, this Complaint is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.


**DATED:** July 23, 2025
Respectfully submitted,

**/s/ Ben Bennett**
*Plaintiff, Pro Se*